# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 13 CR 720 |
| EDGAR MANUEL VALENCIA ORTEGA, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

On September 12, 2013, the Special July 2013 grand jury returned a sealed one-count indictment charging Edgar Manuel Valencia Ortega with conspiracy to distribute more than 5 kilograms of cocaine, in violation of 21 U.S.C. § 846. The indictment alleged that he "conspire[d] with Individual B, and with others known and unknown to the Grand Jury." Valencia is evidently a Mexican national. A warrant was issued for his arrest.

The government contends that it had been investigating Valencia since at least April 2013 and that it learned in September 2013 that he was traveling to Las Vegas. The government sought criminal charges so that it could arrest him while he was in the United States.

On January 26, 2013, DEA agents arrested Valencia at Las Vegas International Airport upon his arrival on a flight from Mexico. Valencia says that when arrested, he immediately asked for counsel and showed agents the business card of his attorney

Victor Hernandez, whose office is in San Jose, California. Valencia says that despite this, agents and a federal prosecutor questioned him repeatedly over a period of two days. He also says that even though attorney Hernandez showed up at a local jail looking for Valencia, Hernandez was not told where Valencia was.

The government disputes this. It says that Valencia asked on January 27 whether he was entitled to counsel and that in response, he was told that he was in fact so entitled and that if he requested counsel, all questioning would cease. The government contends that Valencia showed the government's representatives Hernandez's business card but said he had never met Hernandez, and that when the government's representatives asked if Valencia wanted them to contact Hernandez, he declined.

Valencia did not appear in court in Las Vegas and instead waived his right to a removal hearing. On January 28, he was flown to Chicago. The government says that Valencia was given the opportunity to contact family members and that he did so on January 28. According to the government, Valencia thereafter said that he was still unsure whether he wanted to retain Hernandez. Valencia was taken to the Oak Park police station and detained there. The government says this was done in order to preserve the possibility that he might agree to cooperate with the government without this becoming known to others.

According to Valencia, on January 29, the prosecutor advised Hernandez that Valencia was in custody and was at the U.S. Attorney's Office in Chicago. This, the government says, followed a request by Valencia that day to speak with Hernandez. Hernandez contacted a local attorney, Lisa Wood, and asked her to assist in

2

representing Valencia.  Wood went to the U.S. Attorney's Office and met with the prosecutor and a DEA agent.  The prosecutor advised that the government had strong evidence of Valencia's guilt and wanted him to cooperate with the government's ongoing investigation.

According to Valencia, the prosecutor told Wood that Valencia was charged in the indictment in the present case; the government does not dispute this.  Valencia says that the prosecutor advised Wood that the government might decide to indict him in an already pending case, Case No. 09 CR 383, entitled *United States v. Guzman Loera, et al.*, pending before Chief Judge Ruben Castillo.  Both Valencia and the government state that the prosecutor told Wood that this could present a conflict for Hernandez, Wood, and Wood's law partner Paul Brayman, who were already representing another defendant in that case.

According to Valencia, the prosecutor also noted that there was an existing May 12, 2014 trial date in the *Guzman Loera* case and said that if the government decided to add Valencia to that case, the government would "strongly object" to a continuance.  The government's version of this conversation is that the prosecutor told Wood that the government would object to a continuance of the trial date for the other existing defendants in that case (including the other client of Hernandez, Brayman, and Wood) but would not seek to try Valencia and counsel's other client together.

Wood stated that she was not lead counsel and was not in a position to advise Valencia on whether to cooperate.  According to Valencia, the prosecutor then called Hernandez and told him what he had told Wood.  Hernandez asked to speak with Valencia, and a conference call among Hernandez, Wood, and Valencia was arranged.

3

After the conference call, Wood told the prosecutor that Hernandez needed to meet with Valencia in person. That meeting took place at the U.S. Attorney's Office on either January 30 or January 31. After the meeting, the prosecutor was advised that Valencia would not cooperate with the government.

Valencia was arraigned before this Court on January 31. Valencia requested a bond hearing, which the Court set for February 10. At the arraignment, the prosecutor advised the Court of the possibility that Valencia might be charged in the case before Chief Judge Castillo. On February 10, the Court continued the bond hearing to February 25, and on that date the hearing was continued again, to March 18.

On February 27, a sixth superseding indictment was returned in the *Guzman Loera* case, naming as defendants Joaquin Guzman Loera, Valencia, and several others. Only Valencia and one other defendant were newly named in the case. Guzman Loera was first named in the first superseding indictment, returned in August 2009. Guzman Loera is claimed to be the head of a large narcotics cartel based in Mexico. He was recently arrested by Mexican authorities and is in custody in Mexico. Aside from him and Valencia, all of the other defendants named in the sixth superseding indictment are fugitives.

The February 27 sixth superseding indictment in the *Guzman Loera* case was filed under seal, and Valencia's counsel were not made aware that he had been charged in that case until March 14, just a few days before the rescheduled bond hearing in the present case. On March 18, the government orally moved to dismiss the indictment in the present case. Valencia orally objected, arguing that the government was acting in retaliation for his decision not to cooperate and was attempting to

prejudice Valencia unfairly by putting him in an indictment with Guzman Loera. The Court postponed the bond hearing and took the motion to dismiss under advisement. The parties have, since that time, filed briefs regarding the motion to dismiss.

The law is clear that a government cannot dismiss an indictment without court approval. Federal Rule of Criminal Procedure 48(a) says that the "government may, without leave of court, dismiss an indictment, information, or complaint." Fed. R. Crim. P. 48(a).

There is not a great deal of law regarding the circumstances in which a court can or should withhold approval of the government's motion to dismiss an indictment. Both sides appear to agree, however, that Rule 48(a)'s primary purpose is to protect a defendant's rights. Specifically, "the purpose of the rule is to prevent harassment of a defendant by charging, dismissing and re-charging without placing a defendant in jeopardy." *United States v. Salinas*, 693 F.2d 348, 351 (5h Cir. 1982) (internal quotation marks omitted). *Accord, United States v. Olson*, 846 F.2d 1103, 1113 (7th Cir. 1988) (quoting *Salinas* with approval).

The Fifth Circuit stated in the *Salinas* case that the type of "prosecutorial harassment" targeted by Rule 48(a)

> involves charging, dismissing, and subsequently commencing another prosecution at a different time or place deemed more favorable to the prosecution. The key factor in a determination of prosecutorial harassment is the propriety or impropriety of the Government's efforts to terminate the prosecution—the good faith or lack of good faith of the Government in moving to dismiss. The Government must not be motivated by considerations clearly contrary to the public interest.

*Salinas*, 693 F.2d at 351 (footnotes, internal quotation marks, and citation omitted); *see also Olson*, 846 F.2d at 1114 (quoting *Salinas* for the "good faith" standard).

5

The Court has little doubt that the government considers having Valencia as one of several defendants in the *Guzman Loera* case to be "more favorable" to the government than having him named as the sole defendant in the present case. In particular, it is beneficial to the government to have Valencia tried along with others accused in the same conspiracy rather than possibly having to try the same or overlapping conspiracy charges in two different cases. In addition, if Guzman Loera ends up being extradited to the United States and tried along with Valencia, one cannot seriously dispute that the prospect of being tried together with an alleged drug cartel kingpin who is sitting at the defense table is an unfavorable alternative for Valencia and a correspondingly more favorable alternative for the government. For these reasons, the Court concludes that the threshold requirement of the *Salinas* test is met: the government seeks to dismiss the present indictment in favor of a later-commenced indictment that involves a setting that is more advantageous to the government and less advantageous to Valencia.

The real question is whether the government has acted in bad faith. There is some evidence that can be understood to suggest that the government acted as it did in an effort, ultimately unsuccessful, to pressure Valencia into agreeing to cooperate with law enforcement. Specifically, the circumstances arguably suggest that the government held over Valencia's head the prospect of being tried together with Guzman Loera and losing his lawyers due to a conflict of interest that arguably might result from naming Valencia in that case.

Having considered the totality of the circumstances, however, the Court is unpersuaded that the government has acted in bad faith. In particular, the Court finds

persuasive the government's contention that it initially indicted Valencia separately so that it could arrest him when he came to the U.S. and preserve the possibility that he could cooperate with the government without that becoming known.  At present, there is no indication that the charge against Valencia in the *Guzman Loera* case is a baseless charge that was trumped up in order to add Valencia to that case to punish him for deciding not to cooperate with the government.  (If there ends up being a viable challenge to that charge on this basis, Valencia will, of course, have an adequate remedy for that in the context of the *Guzman Loera* case itself.)  In addition, although it is certainly understandable that one might construe the prosecutor's comments to Valencia's counsel about naming him in the *Guzman Loera* case to amount to a threat to induce him to cooperate, there is no indication on the present record that any prosecutor or law enforcement officer made such comments directly to Valencia during the several days before he had counsel.

In addition to these factors, there is no indication that dismissal of the current charge would deprive Valencia of any procedural rights or substantive arguments that he otherwise would have.  He will be able to, in the context of the *Guzman Loera* case, pursue appropriate motions based on his contention that he was held *in communicado* and denied access to counsel following his arrest.  In addition, the government appears to have committed not to seek to try Valencia along with his counsel's other client who is named in an earlier indictment in the *Guzman Loera* case.  The government's reply on the motion to dismiss also reflects that it will not attempt to force Valencia to trial at the unrealistically early date that Valencia's counsel originally understood the government would insist upon.  As for being tried together with Guzman Loera, that is speculative at

7

this point, because Guzman Loera is in Mexico; there is no assurance that he will be extradited here; and it is anything but a foregone conclusion that the government will be able to force a delay of Valencia's trial (assuming he does not agree to a delay) for the length of time that might well be required in order to try the two of them together. In any event, if Guzman Loera is ultimately brought here for trial, Valencia will be able to move for a severance based on a claim of spillover prejudice.

**Conclusion**

For the reasons described above, the Court concludes that the government has not acted in bad faith and that the evidence does not show that it has been motivated by considerations clearly contrary to the public interest. The Court therefore grants the government's oral motion to dismiss the present indictment.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: April 14, 2014